[712 NYS2d 99]

In the Matter of JOHN E. TERZIS, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 27, 2000

**APPEARANCES OF COUNSEL**

*Stephen P. McGoldrick* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent was admitted to the practice of law in the State

of New York by the First Judicial Department on June 20, 1960. He is also admitted to practice as an attorney and counselor-at-law in Connecticut.

The Departmental Disciplinary Committee (hereinafter the Committee) seeks an order, pursuant to Rules of this Court (22 NYCRR) § 603.3, suspending respondent in accordance with the one-year suspension imposed by the Superior Court of Connecticut for the Judicial District of Hartford-New Britain on September 23, 1998 for commingling and misappropriating $2,039.37 while he was serving as president of Sunmore Condominium Association (Sunmore) to pay his personal office and residential expenses, in violation of rules 1.15 and 8.4 of the Connecticut Rules of Professional Conduct, or in the alternative, sanctioning respondent as this Court deems appropriate. In support of its petition, the Committee asserts that respondent is precluded from raising any defense enumerated in 22 NYCRR 603.3 (c). Respondent was served by publication pursuant to an order of the Presiding Justice, entered December 1, 1999, and has not appeared or answered the instant petition.

The charges against respondent are the result of a complaint filed by one Janet Tracy with the Connecticut Statewide Grievance Committee on February 5, 1993, alleging that respondent had misappropriated funds from Sunmore between 1988 and 1990 while serving as president of the condominium association. In reviewing the complaint, the Grievance Committee determined that there was probable cause that respondent engaged in professional misconduct and the matter was referred to a Reviewing Committee for a hearing to determine if there was clear and convincing evidence that respondent engaged in professional misconduct.

Hearings were held on September 8, 1993 and November 10, 1993 at which respondent testified and presented witnesses in his defense. After the hearing, the Reviewing Committee determined that respondent had commingled and misappropriated condominium funds, in violation of Connecticut Rules of Professional Conduct, rules 1.15 and 8.4. The Reviewing Committee recommended that the Grievance Committee file a formal presentment against respondent with the Superior Court for the imposition of whatever discipline the court deemed appropriate. The Grievance Committee agreed with the Reviewing Committee and respondent was duly advised of its decision by letter dated August 18, 1994. On April 28, 1995 the Grievance Committee filed a presentment and an application for order of notice.

Respondent was duly advised of the Superior Court order setting the matter down for hearing on July 12, 1995. Prior to the hearing, respondent made two motions to dismiss the presentment, which motions were denied by the Superior Court. On May 27, 1998, respondent entered into a stipulation with the Grievance Committee whereby he admitted to using Sunmore's funds to pay personal expenses.

The facts developed at the hearing, as supplemented by respondent's stipulation, establish that, during the two-year period in which respondent served as president of Sunmore, he paid approximately seven electric bills for his personal residence and 17 electric bills for his office from the Sunmore checking account. Two members of the executive committee were required to and did in fact sign all checks on behalf of the condominium association. The total amount so paid was $2,039.27. Said payments came to light after July 1990, as a result of an audit by a certified public accountant. Respondent, upon being advised of the accountant's findings, repaid said amount to the condominium association the same day, less a previously paid special assessment of $750, which was subsequently rescinded by the board of directors, and respondent's legal fee of $350 for a foreclosure proceeding for unpaid common charges in which he represented the condominium association.

In defense of the charge that he violated Connecticut rule 8.4 (3), respondent argued that he lacked a fraudulent motive. At the hearing before the Reviewing Committee, respondent claimed that his wife mistakenly mixed his personal utility bills with the utility bills for the association, that he failed to realize this error, and, as a result, he accidently paid for personal expenses with funds from Sunmore's account. Respondent's wife testified at the hearing and corroborated respondent's version of events.

Based upon respondent's stipulation as well as his testimony at the hearing conducted by the Reviewing Committee, the Superior Court held that the Grievance Committee had sustained its burden of proving a violation of Connecticut rules 8.4 (3) and 1.15.

In this proceeding, respondent is precluded from raising any defense of lack of due process, pursuant to 22 NYCRR 603.3 (c) (1), in light of his appearance in the Connecticut disciplinary proceeding and his admission to the facts underlying those charges. The Committee also asserts, and we find, that respondent has no defense under 22 NYCRR 603.3 (c) (2) because the

Superior Court's findings are supported by the record. The court found that the facts presented by respondent did not constitute a defense to the charge that respondent "engaged in conduct involving dishonesty, fraud[,] deceit or misrepresentation" in violation of rule 8.4 (3), stating: "Mr. Terzis maintains that the checks were signed inadvertently and that his wife was responsible for the 'confusion'; this court does not agree. In order to write the checks, he would first have to review the electric bill. Then he would be required to total the different accounts and, at the least at times, place the account numbers(s) on the checks. Mr. Terzis was not simply acting as a scribe; he 'served in an executive position' with the association and, he testified that he is both a CPA and a lawyer. It was surely his duty, at a minimum, to inquire or investigate which account was being paid. Of great significance to this court is Mr. Terzis' own testimony that even though he was the person who paid his family's bills, he never thought it odd—for such a long period of time—that he was not regularly paying any electric bills for his home and office."

While we note that the Superior Court did not find that respondent intentionally converted the condominium funds, it nevertheless held that respondent's indifference to his legal obligation was sufficient to sustain the charge. The court wrote: "The seven payments for the personal residence and the seventeen payments for the office certainly indicate to this court, at a minimum, an indifference to a legal obligation and a violation of Rule 8.4 (3). Repeatedly writing checks for one's own benefit, on another's account, when charged with the care of the account constitutes a violation of the rule. To conclude otherwise, in a situation in which the simplest act of prudence would have presented such action, is not possible."

Finally, the Committee asserts that respondent has no defense under 22 NYCRR 603.3 (c) (3) because the misconduct for which respondent was disciplined by the Connecticut Superior Court constitutes misconduct in New York.

While respondent's violation of Connecticut rule 8.4 (3) would not constitute a violation of the analogous New York rule, Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3), in that the Connecticut Superior Court did not find that respondent intentionally converted condominium funds, a required element of that rule, that court's findings establish that respondent would be found in New York to have violated DR 9-102 (a) and (b) (1) (22 NYCRR 1200.46) and DR 1-102 (a) (8) (now [7]).

In addition to finding that respondent had misappropriated third-party funds in violation of Connecticut rule 8.4 (3), the Superior Court found that respondent, in his capacity as a fiduciary for Sunmore, failed to safeguard the corporate funds in violation of rule 1.15, which provides in relevant part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for such period of time as may be required under applicable law after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

In finding that respondent had violated rule 1.15, the Superior Court noted that respondent was both a fiduciary and an attorney for the corporation and "[t]o the extent he wrote the subject checks utilizing the client's money for his own personal expenses, he surely did not safeguard his client's property."

As such, respondent's negligent misappropriation would constitute a violation of DR 9-102 (a) and (b) (1) in that he failed to segregate Sunmore funds from his own.

Since no defense has been presented or exists, the Committee's petition for an order pursuant to the doctrine of reciprocal discipline as set forth in 22 NYCRR 603.3 with respect to the Connecticut Superior Court's findings of professional misconduct should be granted.

With regard to the issue of sanctions, it is a generally accepted principle that the State where respondent lived and practiced law at the time of the offense has the greatest interest in the issue and the public policy considerations relevant to

such disciplinary actions (*see, Matter of Reiss*, 119 AD2d 1, 6). Given the fact that the Connecticut Superior Court found that respondent committed fraudulent conduct in failing to safeguard client funds and that there were a number of aggravating factors, the one-year suspension imposed by Connecticut was appropriate.

Accordingly, the petition should be granted and respondent suspended from the practice of law for a period of one year, effective immediately, and until further order of this Court.

NARDELLI, J. P., MAZZARELLI, LERNER, ANDRIAS and FRIEDMAN, JJ., concur.

Petition granted and respondent suspended from the practice of law in the State of New York for a period of one year, effective the date hereof.