[722 NYS2d 232]

In the Matter of JOHN M. POWER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 20, 2001

### APPEARANCES OF COUNSEL

*James T. Shed* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Richard M. Maltz* of counsel (*Gentile, Brotman, Maltz & Benjamin, L. L. P.*), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent John M. Power was admitted to the practice of

law in the State of New York by the Second Judicial Department on December 15, 1965, and was admitted to practice as an attorney in New Jersey and Florida in 1992. At all times relevant to this proceeding he has maintained an office for the practice of law in New Jersey as well as within the First Judicial Department.

This is an application by the Departmental Disciplinary Committee (DDC) seeking an order pursuant to 22 NYCRR 603.3, suspending respondent from the practice of law for a period of six months, predicated upon the imposition of similar discipline by the Supreme Court of New Jersey.

By order dated June 20, 2000, the Supreme Court of New Jersey suspended respondent from the practice of law in that State for six months, commencing July 20, 2000, for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of rule 8.4 (c) of the New Jersey Rules of Professional Conduct. That determination was based upon respondent's conduct while serving as general counsel, director and corporate secretary of 21st Century Limited Productions, Inc., a corporation whose purpose was to organize and promote a traveling world fair/exposition which would travel on a train around the country, representing achievements of the 20th century.

The underlying events occurred in the context of a power struggle among the principals of this relatively small corporation. In the fall of 1993, respondent, together with Ralph A. Weisinger, a minority shareholder also serving as a director and officer of the corporation, embarked upon a course of conduct calculated to shift control of the corporation from its majority stockholder, Ross E. Rowland, to themselves. To do so, they enforced a purported stock option agreement dated January 1991 between Rowland and Weisinger, in which Rowland had granted Weisinger the option to buy Rowland's shares in the corporation for $1 per share, with Rowland retaining the right to receive income and dividends, and Weisinger assuming the shares' voting rights. Although Rowland believed that the agreement was to have been destroyed at the end of 1991, and respondent and Weisinger were aware of Rowland's position, on September 13, 1993, Weisinger notified Rowland that he was exercising the option, and respondent, as corporate secretary, entered the transfer in the corporation's stock transfer ledger.

Litigation then immediately began concerning the validity of the stock transfer. However, before the court could hear and

decide the issue,* in early October 1993 respondent and Weisinger issued additional shares of stock to themselves and others, purportedly in exchange for the value of services that had been previously rendered and remained uncompensated. It is undisputed that the decision to issue these shares was made by respondent and Weisinger alone, and that despite respondent's certification that he had the requisite authorization, in fact, the additional shares were issued and sold without official authorization from the board of directors or the other shareholders.

Of the $50,000 received for the additional shares they sold, respondent deposited $48,000 into his own trust account, and from those funds, paid Weisinger $27,000, purportedly as reimbursement for "corporate expenses," and in addition, paid two bills related to the corporate litigation that had been billed directly to his firm. Since it was established that the corporation owed other debts totaling approximately $800,000, including unpaid salary and loans payable to Rowland, these particular disbursements were clearly preferential in nature.

The New Jersey Disciplinary Review Board confirmed findings that respondent had violated New Jersey Rules of Professional Conduct, rule 8.4 (c), based upon the evidence that respondent had: issued shares of stock to himself and others without corporate authority; deposited proceeds of stock sales into his own trust account, and from that account made preferential payments to select creditors, including himself and Weisinger; and transferred Rowland's shares to Weisinger pursuant to a purported stock option agreement while the validity of the stock option agreement was being litigated.

In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 603.3 (c), respondent is precluded from raising any defenses except (1) a lack of notice constituting a deprivation of due process, (2) an infirmity of the proof presented to the foreign jurisdiction, or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this State. Respondent does not rely upon any of the foregoing defenses.

Clearly, no viable defense exists under 22 NYCRR 603.3 (c) (1), inasmuch as respondent was provided with sufficient notice and opportunity to be heard in the New Jersey matter (*see,*

---

* Because two of its creditors forced the corporation into involuntary bankruptcy, the court never ruled on the validity of the 1991 stock option agreement between Rowland and Weisinger.

*Matter of Terzis*, 274 AD2d 230). Furthermore, review of the evidence presented in the hearing conducted before the Special Master appointed by the New Jersey District X Ethics Committee establishes that there was no infirmity of proof such as would provide respondent with a successful defense under 22 NYCRR 603.3 (c) (2). Finally, inasmuch as the prohibition of New Jersey Rules of Professional Conduct, rule 8.4 (c), against "conduct involving dishonesty, fraud, deceit or misrepresentation," parallels Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3), which also prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation (*see, Matter of McCue*, 252 AD2d 343, 345), respondent cannot logically offer as a defense under 22 NYCRR 603.3 (c) (3) that his misconduct, which has been determined to involve dishonesty, fraud, deceit or misrepresentation, does not constitute misconduct in this State.

In arguing that this Court should decline to impose reciprocal discipline, respondent emphasizes that in 1994, petitioner Departmental Disciplinary Committee reviewed a complaint made by Rowland based upon the same facts, and dismissed the complaint. However, since the prior dismissal was based solely upon a written complaint, without investigation through depositions or a hearing, it cannot be considered a binding determination on the merits.

As to the recommendation of dismissal initially made by the Grievance Examiner who first considered the complaint on behalf of the New Jersey District X Ethics Committee, it is of no consequence to this reciprocal discipline petition, inasmuch as it was reversed upon review.

Respondent further points out that there is no precedent for the type of misconduct considered here, intertwined with a battle over corporate dominance. He also argues that because his conduct took place in a corporate context, imposition of a public sanction is inappropriate, in that it would in the future encourage those embroiled in internal corporate disputes to seek both discovery and resolution within the disciplinary context.

In the absence of a defense under 22 NYCRR 603.3 (c), we conclude that imposition of reciprocal discipline is appropriate. With regard to the issue of sanctions, this Court has generally given deference to the sanction imposed in the State where the offense occurred (*see, Matter of Gilbert*, 268 AD2d 67). The absence of any prior similar disciplinary proceeding does not warrant imposition of a lesser sanction than that imposed in

the originating jurisdiction. Nor does the corporate context in which the misconduct occurred justify a lesser sanction, where the conduct included a false certification of authority and the making of preferential payments for the financial benefit of respondent and his allies.

Accordingly, the petition should be granted and respondent suspended from the practice of law in this State for a period of six months.

ROSENBERGER, J. P., MAZZARELLI, ANDRIAS, RUBIN and SAXE, JJ., concur.

Petition to suspend respondent pursuant to the doctrine of reciprocal discipline granted and respondent suspended from the practice of law in the State of New York for a period of six months, effective April 19, 2001.